## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | | |
|---|---|---|
| BRYAN KEITH BOWSER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:15-11417 |
| | ) | |
| CAROLYN. W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Orders entered July 22, 2015, and January 5, 2016 (Document Nos. 3 and 14.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 12.)

The Plaintiff, Bryan Keith Bowser (hereinafter referred to as "Claimant"), filed an application for DIB on August 21, 2012, alleging disability as of April 1, 2005,[1] due to knee problems.[2] (Tr. at 11, 111-12, 125, 128.) The claims were denied initially and upon reconsideration. (Tr. at 11, 49-52, 53, 54-57, 58, 61-63, 65-67.) On December 11, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 11, 68-69.) A

---

[1] On February 19, 2014, Claimant amended his alleged onset date to October 11, 2007. (Tr. at 11, 124.)

[2] On his form Disability Report – Appeal, dated December 12, 2012, Claimant alleged "more knee problems," that resulted in limited mobility. (Tr. at 147.)

hearing was held on February 19, 2014, before the Honorable Maria Hodges. (Tr. at 11, 22-48.) By decision dated March 5, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-18.) The ALJ's decision became the final decision of the Commissioner on May 29, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on July 22, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir.

1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the amended alleged onset date, October 11, 2007. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "bilateral knee arthritis," which was a severe impairment. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to cold and vibration. He can frequently stoop, occasionally kneel, crouch and crawl and can occasionally climb ramps or stairs. He requires a cane for walking and would need a sit/stand option at will.

(Tr. at 14, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 16, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as a cashier, information clerk, and order clerk, at the unskilled, light level of exertion. (Tr. at 16-17, Finding No. 10.) On this basis, benefits was denied. (Tr. at 17, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, the Fourth Circuit Court of Appeals defined substantial evidence as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 11, 1957, and was 57 years old at the time of the administrative hearing on February 19, 2014.[3] (Tr. at 16, 27, 114, 125.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at

---

[3] The undersigned notes that although the ALJ stated that Claimant was a "younger individual age 18-49," such statement clearly was a typographical error. (Tr. at 16, Finding No. 7.) The ALJ correctly identified Claimant's birthdate as October 11, 1957, and noted that he was 53 years old as of December 31, 2010, the date last insured. (*Id.*) In referencing the Medical-Vocational Guidelines, the ALJ properly referenced Rule 203.22, which applies to an individual closely approaching advanced age. Furthermore, at the administrate hearing, the ALJ posed a hypothetical question to the VE, that included someone of Claimant's age, "the age being 50 to 53 for the time period." (Tr. at 45.) The ALJ's reference to Claimant as a younger individual therefore, clearly was a typographical error, and the undersigned finds that the ALJ referenced Claimant's correct age as of the date last insured in all other respects of her decision.

16, 27, 127, 129.) In the past, he worked as a chef and mining truck driver. (Tr. at 16, 44-45, 129.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

*Evidence Submitted Prior to the Relevant Period*:

On November 11, 2005, Claimant presented to Richard M. Konsens, M.D., at Jewett Orthopedic Clinic, P.A., for evaluation of the bilateral knees. (Tr. at 175.) Claimant last was examined two and one half years prior, on follow-up examination after bilateral arthroscopy. (Id.) Claimant reported only minimal left knee pain, for which he took his wife's prescribed Lodine. (Id.) Physical examination demonstrated painless range of motion, but some tenderness in the right knee joint lines. (Id.) Dr. Burns assessed right knee greater than left knee pain. (Id.) Dr. Konsens recommended icing, stretching, home exercises, relative rest, and medication. (Tr. at 176.)

On May 23, 2006, Claimant reported that his right knee was "doing well," but that he had problems with his left knee after he sustained a hyperextension injury four to five days prior. (Tr. at 173.) Dr. Konsens noted minimal effusion, mild medial greater than lateral tenderness, a lack of instability or calf pain, intact distal pulses, and an ability to extend fully against resistance and gravity. (Id.) Dr. Konsens provided Claimant an injection in his left knee and recommended icing, stretching, and home exercises, along with Naprosyn. (Id.)

Claimant returned to Dr. Konsens on April 27, 2007, at which time he reported left knee problems primarily on the medial side, unassociated with recent injury, trauma, or fall. (Tr. at 171.) On examination, Dr. Konsens observed left knee motion from 0 to 120, medial greater than

lateral tenderness, a lack of instability or calf pain, intact distal pulses, and no gross deformity. (Id.) The x-rays of the left knee demonstrated significant narrowing of the medial compartment, osteophyte formation, sclerosis, and mild varus bow. (Id.) He diagnosed worsening arthritis of the left knee and recommended icing, stretching, and home exercises, and administered an injection. (Tr. at 171-72.)

Claimant reported continued left knee problems on June 5, 2007, and indicated that the injection provided only short-term relief. (T. at 169.) Dr. Konsens noted that his symptoms were slightly worse and that he had pain with every step. (Id.) Examination revealed painless range of knee motion and intact pulses. (Id.) Dr. Konsens suggested Synvisc injections and gave him prescriptions for Vicodin for pain and Naprosyn. (Id.) On June 28, 2007, Claimant reported chest and left great toe injuries that resulted from him having flipped his four wheeler a week prior. (Tr. at 167.) Examination revealed mild swelling of the left great toe, with minimal pain with passive motion. (Id.) Chest x-rays were unremarkable. (Id.) Dr. Konsens diagnosed contusion versus crush injury of the left great toe and bilateral knee arthritis. (Id.) He administered a Synvisc injection into each knee and recommended that he ice, elevate, walk on his heel, and ambulate weight bearing as tolerated regarding the toe injury. (Id.)

On July 10, 2007, Claimant presented for his third and final Synvisc injection to the knees. (Tr. at 165.) Claimant reported "some significant improvement in his symptoms" and denied any inflammatory reaction. (Id.) Examination revealed bilateral crepitus, positive patellar grind and medial joint discomfort, soft and supple calf, and intact neurovascular exam. (Id.) Claimant tolerated the injection well. (Id.)

*Evidence Submitted After the Relevant Period*:

On August 22, 2013, Claimant presented to Brian J. Loshbough, FNP, to establish care as

a new patient at Family Care Health Center in Teays Valley. (Tr. at 162-64.) Claimant complained of knee pain and arthritis in his hands and knuckles, accompanied by poor hand grips and upper extremity numbness. (Tr. at 162.) He reported a history of a heart murmur and knee surgery in 2003, to remove spurs. (Id.) Claimant did not take any medication, other than occasional Ibuprofen. (Id.) Mr. Loshbough noted that Claimant was not in any acute distress and that although Claimant reported knee tenderness and poor hand grip, he failed to observe any obvious musculoskeletal abnormalities. (Tr. at 163.) Mr. Loshbough assessed degenerative joint disease, bilateral knee pain, hand and finger pain, and bilateral hand numbness with poor grip. (Tr. at 164.)

An MRI of Claimant's left knee on August 28, 2013, revealed severe degenerative changes and near total degeneration and/or fragmentation of the posterior horn of the medial meniscus with adjacent hyaline cartilage defects and probable parameniscal cyst. (Tr. at 178-79.) The MRI of his right knee also revealed severe degenerative changes and extensive degeneration and tearing of the medial meniscus with associated chondromyalacia. (Tr. at 180.) The scan also revealed a small vertical tear of the posterior horn of the lateral meniscus superimposed upon degenerative changes and a near total anterior cruciate ligament tear that likely was chronic. (Tr. at 181.)

The EMG and nerve conduction study, conducted by Dr. Joby Joseph, also on August 28, 2013, revealed bilateral carpal tunnel syndrome ("CTS"), with the right side worse than the left side. (Tr. at 182-84.) Upper extremity radiculopathy was not demonstrated by needle examination. (Tr. at 182.)

Claimant presented to Dr. David Felder, M.D., at Teays Valley Orthopedics, on October 8, 2013, with complaints of bilateral knee pain, accompanied by popping and grinding, decreased

mobility, limping, and weakness. (Tr. at 191-92.) Claimant described the pain as piercing in nature, that was aggravated by bending, climbing and descending stairs, lifting, movement, sitting, walking, and standing. (Tr. at 191.) There were no pain relieving factors. (Id.) Dr. Felder noted associated symptoms that included decreased mobility, difficulty initiating sleep, limping, nocturnal awakening, nocturnal pain, and weakness. (Id.) Claimant reported a history of knee problems since he was 20 years old. (Id.) Dr. Felder reviewed the MRI reports and ordered x-rays, which demonstrated significant compartmental DJD, with significant narrowing of the left medial joint and narrowing of the right medial joint. (Tr. at 191, 195.) Dr. Felder also reviewed the reports of Claimant's EMG and nerve conduction study. (Id.)

Physical examination revealed good range of left knee motion, medial tenderness, and crepitus on patella compression. (Id.) The right knee examination revealed less tenderness than the left, mild crepitus on patella compression, and good motor and sensory exam. (Id.) Dr. Felder noted that the right wrist revealed positive Tinel's sign into the middle finger, especially; decreased sensation in the median nerve; and negative Phalen's test. (Id.) The left wrist also demonstrated positive Tinel's sign, decreased sensation in the median nerve fingers, and negative Phalen's test. (Id.) Dr. Felder diagnosed severe DJD of both knees, tri-compartmental; tear of the medial meniscus of the knee joint; and chronic bilateral CTS, right greater than the left. (Tr. at 191, 193.) He recommended bilateral CTS release surgery and bilateral total knee replacement. (Tr. at 191.)

Claimant returned to Dr. Felder on October 17, 2013, for a pre-operative visit, with complaints of difficulty walking due to knee pain and bilateral wrist, finger, and hand pain. (Tr. at 196-97.) Examination revealed very positive Tinel's sign of the right wrist, radiating into the middle, index, and ring fingers. (Tr. at 196.) He also had decreased sensation and positive

Phalen's test. (Id.) Examination of the left wrist revealed positive Tinel's, and moderately positive Phalen's signs, with decreased sensation. (Id.) Dr. Felder noted that Claimant's CTS had not responded to conservative treatment and scheduled him for bilateral CTS release. (Id.)

Claimant underwent bilateral CTS on October 21, 2013. (Tr. at 202-03.) He returned to Dr. Felder for follow-up exam, status post bilateral CTS release on October 24, 2013, with no complaints other than mild incisional discomfort. (Tr. at 199.) Claimant denied any numbness or tingling in the fingers. (Id.) Dr. Felder instructed him to use over-the-counter commercial wrist supports. (Id.) On October 31, 2013, Claimant reported only slight numbness in the distal end of his fingers of the right hand, but denied any pain and noted that he had worn his wrist supports. (Tr. at 204.) Dr. Felder noted Claimant's desire to proceed with a left total knee replacement due to pain and discomfort and ineffective conservative treatment, including prescription Mobic. (Id.)

Claimant also was examined by Mr. Loshbough on October 30, 2013, for follow-up exam. (Tr. at 185-87.) Mr. Loshbough noted that Claimant was doing well following his bilateral CTS surgeries and that knee surgery was being planned. (Tr. at 185.) On examination, Mr. Loshbough noted that Claimant had a stiff gait, grossly normal movement of all extremities and spine, and that he wore splints on both wrists. (Tr. at 186.)

On November 12, 2013, Dr. Felder noted that Claimant was "doing well" and that he had only slight decreased sensation on the volar tips of the ring and middle fingers. (Tr. at 207.) On December 5, 2013, Claimant presented with significant left knee discomfort. (Tr. at 210.) On exam, Claimant had good range of motion, but with discomfort. (Id.) He had an antalgic gait. (Id.) Dr. Felder noted that Claimant had some tenderness over the incision of his hands but was improving, with decreased sensation in the tips of the middle and ring fingers and good motor

exam. (Id.) Claimant underwent left total knee replacement on December 9, 2013. (Tr. at 213-15.) On December 17, 2013, at a one week post-operative visit, Claimant presented with a cane. (Tr. at 216.) Dr. Felder noted that Claimant had good motor and sensory exam to the toes and was doing well. (Id.) On December 26, 2013, Dr. Felder noted that Claimant was undergoing physical therapy, which helped improve his moderate pain in the knee. (Tr. at 219.) He noted that Claimant was "remarkably improved relative to pain in the knee." (Id.) He observed good motor and sensory exam and no instability. (Id.) On January 2, 2014, Dr. Felder noted that Claimant was "doing very well." (Tr. at 222.) Claimant continued to walk with a cane and reported pain, but was attending physical therapy for strengthening and ambulation. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing his RFC when she failed to provide an adequate explanation for her RFC finding. (Document No. 10 at 6-9.) Specifically, Claimant asserts that the ALJ failed to provide the narrative, function by function analysis set forth in Mascio v. Colvin, 780 F.2d 632 (4th Cir. 2015). Claimant contends that the analysis especially was important because the record was void of any medical opinion regarding Claimant's ability to perform work-related activities. (Id. at 8.) He further asserts that pursuant to SSR 83-10, medium work requires flexibility of the knees, and contends that the ALJ failed to address any additional limitations in sitting, standing, walking, lifting/carrying, and pushing/pulling. (Id. at 8.) He further asserts that in response, to the hypothetical question to the VE, the ALJ failed to clarify any functional limitations that would have precluded medium work. (Id.)

In response, the Commissioner asserts that the ALJ's RFC assessment is supported by the substantial evidence of record. (Document No. 12 at 7-10.) The Commissioner notes that

Claimant failed to seek treatment for a six year period from July 2007, through August 2013, which included the relevant period of time. (<u>Id.</u> at 8.) When Claimant re-established medical care in 2013, the Commissioner contends that physical findings were unremarkable following his left total knee replacement and that as of December 2013, Claimant was doing very well. (<u>Id.</u>) The Commissioner further asserts that the ALJ's RFC assessment is supported by Claimant's daily activities. (<u>Id.</u>) Regarding the function-by-function analysis, the Commissioner asserts that the ALJ provided a narrative discussion of the evidence, which was sufficient. (<u>Id.</u> at 8-9.) The Commissioner contends that the "ALJ thoroughly considered all of the pertinent evidence of record, including [Claimant's] treating sources' clinical findings, opinion evidence, his treatment course and effectiveness, daily activities, subjective complaints, and his own description of his limitations." (<u>Id.</u> at 9.) Accordingly, the Commissioner asserts that the ALJ's narrative provided a sufficient explanation of the evidence relied upon, and therefore, her RFC is supported by the substantial evidence of record. (<u>Id.</u> at 9-10.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to find that he had a Listing level impairment. (Document No. 10 at 9-13.) Claimant notes that at step three of the sequential analysis, the ALJ found that respecting Section 1.00, "the examining and treating physicians' reports show the claimant does not have the ambulatory deficits" described therein. (<u>Id.</u> at 9.) Claimant asserts that because the record did not include any opinions or medical source statements regarding Claimant's functional ability, "it is impossible to determine to what 'examining and treating physicians' reports the ALJ is referring in support of her step three finding." (<u>Id.</u>) He further asserts that the ALJ failed to provide any explanation as to why his impairments did not meet or equal Listing 1.02(A), or any analysis to support her conclusion. (<u>Id.</u> at 10-11.)

11

In response, the Commissioner asserts that Claimant fails to present any evidence demonstrating that his knee impairments met or medically equaled the severity required to satisfy a listed impairment, and therefore, is unable to sustain his burden. (Document No. 12 at 10-12.) She contends that the ALJ explicitly found that the evidence failed to demonstrate that Claimant had an inability to ambulate effectively. (Id. at 10-11.) The Commissioner notes that the record "was void of any medical treatment during the relevant period demonstrating any extreme functional limitations in Plaintiff's ability to walk." (Id. at 11.) In the year prior to the amended alleged onset date, Claimant's treating physician, Dr. Konsens failed to document any gross deformities, instability, or gait abnormalities. (Id.) The Commissioner further notes that three years after the date last insured, the evidence failed to establish any deformities, instability, gait abnormalities, or the inability to walk without the use of a walker, two crutches, or two canes. (Id. at 12.) Finally, the Commissioner notes that Claimant's knee impairments did not prevent him from "completing routine ambulatory activities such as household chores." (Id.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to obtain an updated medical opinion when additional medical evidence was received that could have modified the opinion of the State agency medical expert. (Document No. 10 at 14-16.) Claimant asserts that medical evidence was added to the file after the Reconsideration level but prior to the administrative hearing, that confirmed that he suffered from severe bilateral degenerative arthritis of the knees, as the ALJ found. (Id. at 15.) Dr. Boukhemis's opinion however, was not supplemented following the receipt of the additional evidence. (Id.) Claimant asserts that the additional medical evidence "would have compelled the State agency medical consultant to advance through the subsequent steps of the sequential process and to provide a step three analysis." (Id.) Claimant contends that

pursuant to Ruling 96-6p, the ALJ was required to obtain an updated medical opinion from a medical expert. (Id. at 15-16.)

In response, the Commissioner asserts that the ALJ was not required to have obtained a medical expert on the issue of whether Claimant met or medically equaled Listing 1.02. (Document No. 12 at 12-13.) The Commissioner contends that pursuant to the Rules and Regulations, the ALJ bears the ultimate responsibility as to whether a claimant meets or medically equals a Listing impairment and is not bound any finding of a State agency medical consultant. (Id. at 12.) The Commissioner contends that SSR 96-6p requires the ALJ to call on a medical expert only when the ALJ "finds that the record suggests that a judgment of medical equivalence to a Listing is reasonable or additional evidence is submitted that in the opinion of the ALJ may change the state agency medical consultant's finding that an impairment does not equal a Listing." (Id. at 15-16.) Because the record did not suggest that Claimant medically equaled a Listing impairment, and the ALJ failed to find that additional evidence would have changed the State agency medical consultant's opinion of medical equivalence, the ALJ was not required to call on a medical expert. (Id. at 16.) Significantly, the Commissioner notes that the ALJ discussed that the evidence of record after the State agency review failed to demonstrate that Claimant met or equaled a Listing and Claimant fails to identify any evidence that established medical equivalence. (Id.) Consequently, the Commissioner contends that Claimant's argument is without merit and that the ALJ was not required to consult a medical expert. (Id.)

Analysis.

1. RFC Assessment.

Claimant first alleges that the ALJ erred in failing to conduct a "function-by-function" assessment in determining his RFC. (Document No. 10 at 6-9.) "RFC represents the most that an

individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." <u>Id.</u> at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." <u>Id.</u> at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." <u>Id.</u> Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id.</u> "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." <u>Id.</u> at *7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." <u>Id.</u>

In <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." <u>Id.</u> The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. <u>Id.</u> The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." <u>Id.</u> Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." <u>Id.</u> (*Citing* <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)); <u>see also</u>, <u>Ashby v. Colvin</u>, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

In the instant case, the ALJ found that Claimant was capable of performing medium exertional work with some postural and environmental limitations, as well as a sit/stand option at will and the use of a cane for walking. (Tr. at 14.) Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). Ruling 83-10 clarifies that medium work "requires standing or

walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10, 1983 WL 31251, at *5. "Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms." Id. The lifting requirement of medium work further

> usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.)…In most medium jobs, being on one's feet for most of the workday is critical. Being able to do the frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Id.

Claimant argues that the ALJ neither provided the preliminary function-by-function analysis for the limitations she assessed nor the required narrative explanation for her RFC assessment. (Document No. 10 at 7.) Specifically, he asserts that despite assessing a sit/stand option at will, the ALJ "failed to address any additional limitations in sitting, standing, walking, lifting/carrying, and pushing/pulling." (Id. at 8.) Although the ALJ did not provide an explicit function-by-function analysis, the Fourth Circuit in Mascio, explained that is not enough to require remand. Rather, the Court "must assess whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately whether that decision is supported by substantial evidence in the record." Ashby v. Colvin, Civil Action No. 2:14-00674 (S.D. W.Va. Mar. 31, 2015)(J. Copenhaver).

Although Claimant does not challenge the ALJ's pain and credibility assessment, the

16

ALJ first acknowledged the standard in making such assessment. (Tr. at 14.) The ALJ related Claimant's symptoms as bilateral knee pain that was aggravated by bending, climbing, lifting, movement, sitting, walking, and standing. (Tr. at 14-15.) Claimant indicated that his knee condition required him to hire someone to do his yard work for him, but that he was able to do some household chores. (Tr. at 15.) She noted that Claimant underwent injection therapy and surgeries on both knees, that he previously wore braces on his knees in 2007, and that he used a cane for assistance with walking. (Id.) In 2013, after Claimant's date last insured, he underwent left total knee replacement surgery and had spurs removed from the right knee in 2003. (Id.) The ALJ further related Claimant's symptoms as difficulty gripping with pain in both hands, worse on the right. (Id.) Claimant acknowledged however, that he did not have any CTS-related issues prior to his date last insured. (Id.)

The ALJ therefore, concluded that Claimant's medically determinable impairment, the bilateral knee arthritis, reasonably could have expected the alleged symptoms, but that Claimant's symptoms regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. at 15.) The ALJ's decision includes a substantive discussion of her rationale. First, the ALJ noted that three months prior to his amended alleged onset date, medical records demonstrated significant improvement in his symptoms following injection therapy. (Id.) Physical findings revealed bilateral crepitus, positive grinding, and medial joint discomfort. (Id.) Second, the ALJ noted that the medical record was void of any treatment during the relevant period, October 11, 2007, through December 31, 2010. (Tr. at 15-16.) Third, the ALJ acknowledged that the evidence in 2013, three years after the date last insured, demonstrated that although Claimant had a worsening of symptoms, he underwent left total knee

17

replacement with positive results. (Id.) Fourth, and finally, the ALJ acknowledged the opinion of the State agency medical consultant, Dr. Rabah Boukhemis, M.D., that Claimant did not have a severe impairment. (Tr. at 16.) Despite such finding, the ALJ determined that the evidence prior to the amended alleged onset date, October 11, 2007, demonstrated a severe bilateral knee impairment. (Id.)

Accordingly, in view of the limited evidence prior to October 11, 2007, the absence of any treatment records during the relevant period, and the worsening of his condition three years after his date last insured that was improved significantly following a left total knee replacement, the undersigned finds that the ALJ properly rejected Claimant's characterization of his knee condition that was aggravated by any activity. The ALJ undertook the proper analysis and inquired of the VE as to whether Claimant was capable of performing medium exertional work with the need for a cane for walking and a sit/stand option at will. (Tr. at 45-47.) The ALJ therefore, provided a narrative of her explanation as to Claimant's RFC and the undersigned finds that her RFC assessment is supported by the substantial evidence of record.

2. Listing Impairments.

Claimant next alleges that the ALJ erred in assessing his impairment at step three of the sequential analysis. (Document No. 10 at 9-13.) He asserts that the ALJ failed to provide any explanation and provided only a conclusory statement that his impairment did not meet or equal Listing 1.02(A). (Id. at 9.) The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," regardless of age, education or work experience, see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990); 20 C.F.R § 404.925(a) (2014).

Section 1.02(A) of the Listing of Impairments provides criteria for determining whether an individual is disabled by major dysfunction of a joint. The required level of severity for Listing § 1.02(A) is satisfied when the claimant has a major dysfunction of a joint, characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion and findings on imaging of joint space narrowing, bony deconstruction, or ankyloses of the affected joint, with the following requirement:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00B2b;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(A) (2014).

In her decision, the ALJ concluded at step three of the sequential analysis that "the examining and treating physicians' reports" showed that Claimant did "not have the ambulatory deficits described in Section 1.00(B)(2)(b), as required by Section 1.02(A)." (Tr. at 14.) Consequently, the ALJ concluded that Claimant did not meet or medically equal a Listing level impairment under Listing 1.00. (Id.) Although the ALJ did not provide a specific summary of the evidence relied upon in reaching her step three decision, she noted later in her decision that in 2013, treatment notes reflected grossly normal musculoskeletal examinations. (Tr. at 15, 185-87.) She further noted in January 2014, subsequent to a total left knee replacement, Claimant had full extension against gravity and flexion to 110 degrees with no instability. (Tr. at 15.) Although he walked with a cane, there were no noted motor or sensory deficits. (Id.)

Accordingly, in view of the foregoing, the undersigned finds that the ALJ's decision at step three of the sequential analysis is supported by substantial evidence. The ALJ specifically found that the evidence failed to establish an inability to ambulate effectively, as required by

Listing 1.02(A). Although the ALJ did not cite the specific evidence relied upon in the section devoted to her step three analysis, she subsequently summarized the evidence, which demonstrates that Claimant did not have an inability to ambulate effectively. For this reason, the undersigned finds that Claimant's argument is without merit and that the ALJ's decision in this regard is supported by the substantial evidence of record.

3. <u>Updated Medical Opinion</u>.

Finally, Claimant alleges that the ALJ erred in failing to obtain an updated medical opinion, when additional evidence was received following Dr. Boukhemis's opinion that could have modified his opinion. (Document No. 10 at 14-16.) In <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." <u>Id.</u>  The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence.  <u>Id.</u>

It is nevertheless Claimant's responsibility to prove to the Commissioner that she is disabled.  20 C.F.R. § 404.1512(a) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment.  <u>Id.</u> §

404.1512(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." § 404.1512 (c).   In <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.   It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.   The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .   If the process ends at step two, the burden of proof never shifts to the Secretary.   . . .   It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

<u>Bowen v. Yuckert</u>, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. <u>Clark v. Shalala</u>, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a <u>prima facie</u> entitlement to benefits.   <u>See</u> <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")   Similarly, Claimant "bears the risk of non-persuasion." <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056 (4th Cir. 1976).

In determining medical equivalence of an impairment in the Listing of Impairments, the ALJ is responsible for deciding the ultimate legal question. 20 C.F.R. § 404.1527(d); SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996). The ALJ is not bound by a finding by a State agency medical consultant. <u>Id.</u> Nevertheless, SSR 96-6p requires "that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence

before the [ALJ] or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996).

When an ALJ finds that a claimant's impairment is not equivalent to a Listing impairment, the requirement to receive expert opinion evidence may be satisfied by receipt of a State agency medical consultant opinion. Id. The ALJ must obtain an updated medical opinion from a medical expert in the following circumstances:

> When no additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Id.

In the instant matter, the ALJ acknowledged the opinion of Dr. Boukhemis, that Claimant did not suffer from a severe physical impairment. (Tr. at 16, 56-57.) The ALJ afforded Dr. Boukhemis's assessment little weight because there was "sufficient medical evidence of record that reflects a diagnosis of bilateral knee degenerative joint arthritis and there is evidence to support a finding of severe impairment in this regard prior to his date last insured." (Tr. at 16.) In making this finding, the ALJ relied upon the medical records from Dr. Konsens from November 11, 2005, through July 10, 2007, that pre-dated the amended alleged onset date. Although additional evidence that pre-dated and post-dated the relevant period was received, the ALJ did not conclude that such evidence would have changed Dr. Boukhemis's opinion regarding a step three analysis. While the ALJ found that such evidence demonstrated a severe knee impairment, she further found that the evidence failed to establish that Claimant met or medically equaled a

Listing level impairment. The ALJ noted that the record failed to contain any evidence during the relevant period. Pursuant to SSR 96-6p, the ALJ therefore, was not required to obtain an updated expert opinion. Accordingly, the undersigned finds that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88

L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: April 13, 2016.

Omar J. Aboulhosn
United States Magistrate Judge